ELECTRONICALLY FILED
7/30/2025 8:09 PM
01-CV-2025-92025 Aug-29 PM 03:17
CIRCUIT COU U.S. DISTRICT COURT
JEFFERSON COUNTY, N.D. OF ALABAMA
JACQUELINE ANDERSON SMITH, CLERK

FILED

# IN THE CIRCUIT COURT
## FOR THE TENTH JUDICIAL CIRCUIT
### JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| Clinton Calhoun; Barry Amara; Brad Catto; Bruce Keizer; Chester Strange Jr.; Colin Matte; Rebecca Austad, as personal representative of Daniel Austad; David Blevins; Douglas Gill; Edward Duskin; Frank Bologna; Frankie Arriaga; Irvin Lemons; James Bell; Jeen Edwards; Lula Gonnelli; Manuel Martinez; Melvin Burrell; Michael Kinzer; Paul Buckley; Rudolph Rivera; William Trego; Jason Rouse; Filadelfo Cano; Nicholas Bembic; Darin Moore; Ricky Conklin; Demetrius Wharton; Bernard Wood; Scott Derais; Norman Evenson; David Bernier; Frank Bradford;, Craig Witt; David Davis; Jose Olvera; Michael Deluke; Jason Ayers; Bolton Linden; Clinton Lowery; Vincent Kirchoff; Anthony Soos; Scott Herrmann; Woody Walters; Ramon Valentin; David Farren; Kristin Blackwelder; Gene Gray; Harold Rodgers; Jonathan Samelton; John Luke; Scott Mullins; Steven Camp; William Schilling; Michael Minor; Dennis Michel; Dennis Mort; Alfredo Hermosillo; Benjamin Martinez Jr.; Bobby Wall; Brian Joseph; Brian Thomas; Carroll Jordan; Christopher Ledgerwood; Dayton Gabriel; Simon Donais; Rudolfo Obregon; Fred Colston; Glenn Philip McCallister; Jacob Friesner; Jake D. Bozza; James Goodman; James Vogelman; Jay Burke; Jeffrey J. Toma; Jennifer M. Pemp; John Rowley; John Shea; Johnny Johnson; Julio Gonzalez; Katie Ann Hobbs; Kenneth Casper; Kenneth Kline;Kristina M. Summers; Douglas Johnson; Lonny Bartz; Matthew Killen; Melissa Rolli; Michael Arlan; Ray Brown; Michael J. Roberts; Nathaniel Dwight Maling; Paul Akerlund; Paul Cruz; Paul E. Rine; Peter Koch; Quinn C. Fierro; Randy Robinson; Richard Speich; Richard W. Craig; Robert Braden; Robert J. Osborn; Robert Wagner; Se Young Oh; | Civil Action No:_____<br><br><br>**COMPLAINT AND JURY DEMAND** |

**Stephanie A. Hamilton; Tatyana Rameau, Thomas Griffin; Tiffany Tomaso-Kelly; Timothy McChesney; Todd Collins;Todd W. Fick; Ysmael Ramos; and, Diamond Biaselli.**

**Plaintiffs.**

**V.**

**3M COMPANY (f/k/a) Minnesota Mining and Manufacturing Company; AGC CHEMICALS AMERICAS INC.;AMEREX CORPORATION;ARCHROMA U.S. INC.;ARKEMA, INC.;BASF CORPORATION;BUCKEYE FIRE EQUIPMENT COMPANY;CARRIER GLOBAL CORPORATION;CHEMGUARD, INC.;CHEMICALS, INC.;CHUBB FIRE, LTD; CLARIANT CORP.;CORTEVA, INC. DEEPWATER CHEMICALS FC, LLC; DU PONT DE NEMOURS INC. (f/k/a DOWDUPONT INC.);DYNAX CORPORATION;E.I. DU PONT DE NEMOURS AND COMPANY;KIDDE PLC ;NATION FORD CHEMICAL COMPANY; NATIONAL FOAM, INC.; THE CHEMOURS COMPANY;TYCO FIRE PRODUCTS LP, AS SUCCESSOR-IN-INTEREST TO THE ANSUL COMPANY; UNITED TECHNOLOGIES CORPORATION ;UTC FIRE & SECURITY AMERICAS CORPORATION, INC. (f/k/a GE INTERLOGIX, INC.);ALLSTAR FIRE EQUIPMENT;FIRE-DEX, LLC;GLOBE MANUFACTURING COMPANY LLC;HONEYWELL SAFETY PRODUCTS USA, INC.; LION GROUP, INC.;MALLORY SAFETY AND SUPPLY LLC;MINE SAFETY APPLIANCES CO., LLC;PBI PERFORMANCE PRODUCTS, INC.; SOUTHERN MILLS, INC.;STEDFAST USA, INC.; and, W.L. GORE & ASSOCIATES, INC.**

**Defendants.**

## COMPLAINT

COMES NOW, the Plaintiffs, by and through undersigned counsel, and allege upon  information and belief as follows:

## INTRODUCTION

1.      Plaintiffs bring this action for damages for personal injury resulting from exposure to  aqueous film-forming foams ("AFFF") containing the toxic  chemicals collectively known as per  and polyfluoroalkyl substances ("PFAS"). PFAS includes,   but is not limited to, perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS")   and related chemicals including those that degrade to PFOA and/or PFOS.

2.      AFFF is a specialized substance designed to extinguish petroleum-based fires. It has been used for decades by military and civilian firefighters to extinguish fires in training and in response to Class B fires.

3.      Defendants collectively designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise released  into the stream of commerce AFFF with knowledge that it contained highly toxic and bio  persistent PFAS, which would expose end users of the product to the risks associated with PFAS.  Further, defendants designed, marketed, developed, manufactured, distributed, released, trained  users, produced instructional materials, promoted, sold and/or otherwise handled and/or  used underlying chemicals and/or products added to AFFF which contained PFAS for use in  firefighting.

4.     PFAS binds to proteins in the blood of humans exposed to the material and remains and  persists over long periods of time. Due to their unique chemical structure, PFAS accumulates in  the blood and body of exposed individuals.

5.     PFAS are highly toxic and carcinogenic chemicals. Defendants knew, or should have known, that PFAS remains in the human body while presenting significant health risks to humans.

6.     Defendants' PFAS-containing AFFF products were used by the Plaintiffs in their intended manner, without significant change in the products' condition. Plaintiffs were unaware of the dangerous properties of the Defendants' AFFF products and relied on the  Defendants' instructions as to the proper handling of the products. Plaintiffs' consumption,  inhalation and/or dermal absorption of PFAS from Defendant's AFFF products caused  Plaintiffs to develop the serious medical conditions and complications alleged herein.

7.     Through this action, Plaintiffs seek to recover compensatory and punitive damages arising out of the permanent and significant damages sustained as a direct result of exposure to Defendants' AFFF products at various locations during the course of Plaintiffs' training  and firefighting activities. Plaintiffs further seek injunctive, equitable, and declaratory relief arising from the same.

## **JURISIDICTION AND VENUE**

8.     The Defendants are subject to the jurisdiction of this Court on the grounds that (a) one or  more of the Defendants is a foreign corporation whose principal place of business is located in the  State of Alabama; (b) one or more of the Defendants are foreign corporations that either are  registered to conduct business in the State of Alabama and have actually transacted business in Alabama; and/or (c) one or more of the Defendants is a domestic corporation native to the State of  Alabama.

9.    Venue is proper pursuant to *Alabama Code Section 6-3-7* as significant events resulting in  the cause of action and subsequent injuries occurred in this county.

10.    Joinder of all parties is proper pursuant to Rule 20(a) of the *Alabama Rules of Civil Procedure*. Defendants are permissively joined in this action because the exposure, injuries, and relief requested all arise out of similar occurrences or transactions and questions of law and fact are common to all parties.

## **PARTIES**

11.    Plaintiff Clinton Calhoun is a resident and citizen of Center Point, AL.  Plaintiff Clinton Calhoun regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

12.    Plaintiff Clinton Calhoun was diagnosed with thyroid disease (hypothyroidism) as a result of exposure to Defendants' AFFF products.

13.    Plaintiff Barry Amara is a resident and citizen of Loxahatchee, FL. Plaintiff Barry Amaro regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

14.    Plaintiff Barry Amara was diagnosed with Thyroid Disease as a result of exposure to Defendants' AFFF products.

15.    Plaintiff Brad Catto is a resident and citizen of Cecil, PA. Plaintiff Brad Catto regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

16.    Plaintiff Brad Catto was diagnosed with Thyroid Disease as a result of exposure to Defendants' AFFF products.

17.     Plaintiff Bruce Keizer is a resident and citizen of Kalamazoo, MI. Plaintiff Bruce Keizer regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

18.     Plaintiff Bruce Keizer was diagnosed with Thyroid Disease as a result of exposure to Defendants' AFFF products.

19.     Plaintiff Chester Strange Jr is a resident and citizen of Crosby, TX. Plaintiff Chester Strange Jr regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

20.     Plaintiff Chester Strange Jr was diagnosed with Liver Cancer as a result of exposure to Defendants' AFFF products.

21.     Plaintiff Colin Matte is a resident and citizen of Fairfield, CA. Plaintiff Colin Matte regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

22.     Plaintiff Colin Matte was diagnosed with Thyroid Disease as a result of exposure to Defendants' AFFF products.

23.     Plaintiff Daniel Austad was a resident and citizen of Silverton, OR. Plaintiff Daniel Austad regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

24.     Plaintiff Daniel Austad was diagnosed with Thyroid Disease as a result of exposure to Defendants' AFFF products.

25.     Plaintiff David Blevins is a resident and citizen of Gray, TN. Plaintiff David Blevins regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

26.    Plaintiff David Blevins was diagnosed with Thyroid Disease as a result of exposure to Defendants' AFFF products.

27.    Plaintiff Douglas Gill is a resident and citizen of Everett, WA. Plaintiff Douglas Gill regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

28.    Plaintiff Douglas Gill was diagnosed with Thyroid Disease as a result of exposure to Defendants' AFFF products.

29.    Plaintiff Edward Duskin is a resident and citizen of Cincinnati, OH Plaintiff Edward Duskin regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

30.    Plaintiff Edward Duskin was diagnosed with Thyroid Disease as a result of exposure to Defendants' AFFF products.

31.    Plaintiff Frank Bologna is a resident and citizen of Knoxville, TN.  Plaintiff Frank Bologna regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

32.    Plaintiff Frank Bologna was diagnosed with Thyroid Disease and Kidney Cancer as a result of exposure to Defendants' AFFF products.

33.    Plaintiff Frankie Arriaga is a resident and citizen of Garland, TX. Plaintiff Frankie Arriaga regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

34.    Plaintiff Frankie Arriaga was diagnosed with Thyroid Disease as a result of exposure to Defendants' AFFF products.

35.     Plaintiff Irvin Lemons is a resident and citizen of Moss Point, MS. Plaintiff Irvin Lemons regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

36.     Plaintiff Irvin Lemons was diagnosed with Kidney Cancer as a result of exposure to Defendants' AFFF products.

37.     Plaintiff James Bell is a resident and citizen of Queen City, TX. Plaintiff James Bell regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

38.     Plaintiff James Bell was diagnosed with Testicular Cancer as a result of exposure to Defendants' AFFF products.

39.     Plaintiff Jeen Edwards is a resident and citizen of Salt Lake City, UT. Plaintiff Jeen Edwards regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

40.     Plaintiff Jeen Edwards was diagnosed with Thyroid Disease as a result of exposure to Defendants' AFFF products.

41.     Plaintiff Lula Gonnelli is a resident and citizen of Pinellas Park, FL. Plaintiff Lula Gonnelli regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

42.     Plaintiff Lula Gonnelli was diagnosed with Kidney Cancer as a result of exposure to Defendants' AFFF products.

43.     Plaintiff Manuel Martinez is a resident and citizen of El Paso, TX. Plaintiff Manuel Martinez regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

44.     Plaintiff Manuel Martinez was diagnosed with Thyroid Disease as a result of exposure to Defendants' AFFF products.

45.     Plaintiff Melvin Burrell is a resident and citizen of Fincastle, VA. Plaintiff Melvin Burrell regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

46.     Plaintiff Melvin Burrell was diagnosed with Thyroid Disease as a result of exposure to Defendants' AFFF products.

47.     Plaintiff Michael Kinzer is a resident and citizen of Millington, TN. Plaintiff Michael Kinzer regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

48.     Plaintiff Michael Kinzer was diagnosed with Ulcerative Colitis as a result of exposure to Defendants' AFFF products.

49.     Plaintiff Paul Buckley is a resident and citizen of Mansfield, TX. Plaintiff Paul Buckley regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

50.     Plaintiff Paul Buckley was diagnosed with Testicular Cancer as a result of exposure to Defendants' AFFF products.

51.     Plaintiff Rudolph Rivera is a resident and citizen of Victoria, TX. Plaintiff Rudolph Rivera regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

52.    Plaintiff Rudolph Rivera was diagnosed with Kidney Cancer as a result of exposure to Defendants' AFFF products.

53.    Plaintiff William Trego is a resident and citizen of Exton, PA. Plaintiff William Trego regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

54.    Plaintiff William Trego was diagnosed with Kidney Cancer as a result of exposure to Defendants' AFFF products.

55.    Plaintiff Jason Rouse is a resident and citizen of Vancouver, WA. Plaintiff Jason Rouse regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

56.    Plaintiff Jason Rouse was diagnosed with thyroid disease (hypothyroidism), as a result of exposure to Defendants' AFFF products.

57.    Plaintiff Filadelfo Cano is a resident and citizen of Chicago, IL. Plaintiff Filadelfo Cano regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

58.    Plaintiff Filadelfo Cano was diagnosed with testicular cancer as a result of exposure to Defendants' AFFF products.

59.    Plaintiff Nicholas Bembic is a resident and citizen of Irwin, PA. Plaintiff Nicholas Bembic regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

60.    Plaintiff Nicholas Bembic was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF products.

61.     Plaintiff Darin Moore is a resident and citizen of Palm Springs, CA.  Plaintiff Darin Moore regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

62.     Plaintiff Darin Moore was diagnosed with thyroid disease (hypothyroidism) as a result of exposure to Defendants' AFFF products.

63.     Plaintiff Ricky Conklin is a resident and citizen of Saint Cloud, FL.  Plaintiff Ricky Conklin regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

64.     Plaintiff Ricky Conklin was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

65.     Plaintiff Demetrius Wharton is a resident and citizen of Charlotte, NC.   Plaintiff Demetrius Wharton regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

66.     Plaintiff Demetrius Wharton was diagnosed with thyroid cancer as a result of exposure to Defendants' AFFF products.

67.     Plaintiff Bernard Wood is a resident and citizen of Wabasha, MN.  Plaintiff Bernard Wood regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

68.     Plaintiff Bernard Wood was diagnosed with liver cancer as a result of exposure to Defendants' AFFF products.

69.     Plaintiff Scott Derais is a resident and citizen of Pekin, IL.  Plaintiff Scott Derais regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

70.    Plaintiff Scott Derais was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

71.    Plaintiff Norman Evenson is a resident and citizen of Fargo, ND.  Plaintiff Norman Evenson regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

72.    Plaintiff Norman Evenson was diagnosed with liver cancer as a result of exposure to Defendants' AFFF products.

73.    Plaintiff David Bernier is a resident and citizen of Sanford, ME.  Plaintiff David Bernier regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

74.    Plaintiff David Bernier was diagnosed with thyroid cancer as a result of exposure to Defendants' AFFF products.

75.    Plaintiff Frank Bradford is a resident and citizen of Tucson, AZ.  Plaintiff Frank Bradford regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

76.    Plaintiff Frank Bradford was diagnosed with thyroid disease (hyperparathyroidism) as a result of exposure to Defendants' AFFF products.

77.    Plaintiff Craig Witt is a resident and citizen of Summit, NY.  Plaintiff Craig Witt regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

78.    Plaintiff Craig Witt was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

79. Plaintiff David Davis is a resident and citizen of Chesapeake, VA. Plaintiff David Davis regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

80. Plaintiff David Davis was diagnosed with thyroid disease (hypothyroidism) as a result of exposure to Defendants' AFFF products.

81. Plaintiff Jose Olvera is a resident and citizen of El Paso, TX. Plaintiff Jose Olvera regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

82. Plaintiff Jose Olvera was diagnosed with thyroid disease (hypothyroidism) as a result of exposure to Defendants' AFFF products.

83. Plaintiff Michael Deluke is a resident and citizen of Niagra Falls, NY. Plaintiff Michael Deluke regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

84. Plaintiff Michael Deluke was diagnosed with kidney cancer as a result of exposure to Defendants' AFFF products.

85. Plaintiff Jason Ayers is a resident and citizen of Phoenix, AZ. Plaintiff Jason Ayers regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

86. Plaintiff Jason Ayers was diagnosed with thyroid disease (Graves' disease, hypothyroidism) as a result of exposure to Defendants' AFFF products.

87. Plaintiff Bolton Linden is a resident and citizen of Sidney, MT. Plaintiff Bolton Linden regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

88.    Plaintiff Bolton Linden was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF products.

89.    Plaintiff Clinton Lowery is a resident and citizen of Orangeburg, SC.  Plaintiff Clinton Lowery regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

90.    Plaintiff Clinton Lowery was diagnosed with thyroid cancer as a result of exposure to Defendants' AFFF products.

91.    Plaintiff Vincent Kirchoff is a resident and citizen of Olympia, WA.  Plaintiff Vincent Kirchoff regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

92.    Plaintiff Vincent Kirchoff was diagnosed with thyroid disease (hypothyroidism) as a result of exposure to Defendants' AFFF products.

93.    Plaintiff Anthony Soos is a resident and citizen of Grovetown, GA.  Plaintiff Anthony Soos regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

94.    Plaintiff Anthony Soos was diagnosed with thyroid disease (hypothyroidism) as a result of exposure to Defendants' AFFF products.

95.    Plaintiff Scott Herrmann is a resident and citizen of Silver Lake, KS.  Plaintiff Scott Herrmann regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

96.    Plaintiff Scott Herrmann was diagnosed with thyroid cancer as a result of exposure to Defendants' AFFF products.

97.      Plaintiff Woody Walters is a resident and citizen of North Branch, MN.  Plaintiff Woody Walters regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

98.      Plaintiff Woody Walters was diagnosed with thyroid disease (hypothyroidism) as a result of exposure to Defendants' AFFF products.

99.      Plaintiff Ramon Valentin is a resident and citizen of Hammonton, NJ.  Plaintiff Ramon Valentin regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

100.      Plaintiff Ramon Valentin was diagnosed with thyroid disease (hypothyroidism) as a result of exposure to Defendants' AFFF products.

101.      Plaintiff David Farren is a resident and citizen of Lancaster, CA.  Plaintiff David Farren regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

102.      Plaintiff David Farren was diagnosed with thyroid disease (hypothyroidism) as a result of exposure to Defendants' AFFF products.

103.      Plaintiff Kristin Blackwelder is a resident and citizen of North Canton, OH.  Plaintiff Kristin Blackwelder regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

104.      Plaintiff Kristin Blackwelder was diagnosed with thyroid disease (hypothyroidism) as a result of exposure to Defendants' AFFF products.

105.      Plaintiff Gene Gray is a resident and citizen of Norton Shores, MI.  Plaintiff Gene Gray regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

106.    Plaintiff Gene Gray was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

107.    Plaintiff Harold Rodgers is a resident and citizen of Boise, ID.  Plaintiff Harold Rodgers regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

108.    Plaintiff Harold Rodgers was diagnosed with thyroid disease (hypothyroidism) as a result of exposure to Defendants' AFFF products.

109.    Plaintiff Jonathan Samelton is a resident and citizen of Samper Hill, FL.  Plaintiff Jonathan Samelton regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

110.    Plaintiff Jonathan Samelton was diagnosed with thyroid disease (hypothyroidism) as a result of exposure to Defendants' AFFF products.

111.    Plaintiff John Luke is a resident and citizen of Mount Vernon, OH.  Plaintiff John Luke regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

112.    Plaintiff John Luke was diagnosed with thyroid disease (hypothyroidism) as a result of exposure to Defendants' AFFF products.

113.    Plaintiff Scott Mullins is a resident and citizen of Cypress, TX.  Plaintiff Scott Mullins regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

114.    Plaintiff Scott Mullins was diagnosed with liver cancer as a result of exposure to Defendants' AFFF products.

115.    Plaintiff Steven Camp is a resident and citizen of Monroe, NC.  Plaintiff Steven Camp regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

116.    Plaintiff Steven Camp was diagnosed with thyroid disease (hypothyroidism) as a result of exposure to Defendants' AFFF products.

117.    Plaintiff William Schilling is a resident and citizen of Taylorsville, GA.  Plaintiff William Schilling regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

118.    Plaintiff William Schilling was diagnosed with thyroid disease (hypothyroidism) as a result of exposure to Defendants' AFFF products.

119.    Plaintiff Michael Minor is a resident and citizen of Moses Lake, WA.  Plaintiff Michael Minor regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

120.    Plaintiff Michael Minor was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

121.    Plaintiff Dennis Michel is a resident and citizen of Orlando, FL.  Plaintiff Dennis Michel regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

122.    Plaintiff Dennis Michel was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF products.

123.    Plaintiff Dennis Mort is a resident and citizen of Gig Harbor, WA.  Plaintiff Dennis Mort regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

124.    Plaintiff Dennis Mort was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF products.

125.    Plaintiff Alfredo Hermosillo is a resident and citizen of Holly Lake Ranch, TX. Plaintiff Alfredo Hermosillo regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

126.    Plaintiff Alfredo Hermosillo was diagnosed with Lt Renal cell carcinoma as a result of exposure to Defendants' AFFF products.

127.    Plaintiff Benjamin Martinez Jr is a resident and citizen of Rialto, CA. Plaintiff Benjamin Martinez Jr regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

128.    Plaintiff Benjamin Martinez Jr was diagnosed with Kidney Cancer as a result of exposure to Defendants' AFFF products.

129.    Plaintiff Bobby Wall is a resident and citizen of Mount Airy, NC. Plaintiff Bobby Wall regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

130.    Plaintiff Bobby Wall was diagnosed with Thyroid Cancer as a result of exposure to Defendants' AFFF products.

131.    Plaintiff Brian Joseph is a resident and citizen of Clermont, FL. Plaintiff Brian Joseph regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

132.    Plaintiff Brian Joseph was diagnosed with post-surgical thyroidectomy as a result of exposure to Defendants' AFFF products.

133.    Plaintiff Brian Thomas is a resident and citizen of Robinson, TX. Plaintiff Brian Thomas regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

134.    Plaintiff Brian Thomas was diagnosed with Testicular Cancer as a result of exposure to Defendants' AFFF products.

135.    Plaintiff Carroll Jordan is a resident and citizen of Apison, TN. Plaintiff Carroll Jordan regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

136.    Plaintiff Carroll Jordan was diagnosed with Hypothyroidism as a result of exposure to Defendants' AFFF products.

137.    Plaintiff Christopher Ledgerwood is a resident and citizen of Mountain View, MO.

138.    Plaintiff Christopher Ledgerwood regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

139.    Plaintiff Christopher Ledgerwood was diagnosed with Kidney Cancer as a result of exposure to Defendants' AFFF products.

140.    Plaintiff Dayton Gabriel Simon Donais is a resident and citizen of Phoenix, AZ. Plaintiff Dayton Gabriel Simon Donais regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

141.    Plaintiff Dayton Gabriel Simon Donais was diagnosed with Hypothyroidism as a result of exposure to Defendants' AFFF products.

142.    Plaintiff Francisco Rudolfo Obregon is a resident and citizen of Los Angeles, CA.

143.    Plaintiff Francisco Rudolfo Obregon regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

144.    Plaintiff Francisco Rudolfo Obregon was diagnosed with Testicular Cancer as a result of exposure to Defendants' AFFF products.

145.    Plaintiff Fred Colston is a resident and citizen of Chesapeake, VA. Plaintiff Fred Colston regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

146.    Plaintiff Fred Colston was diagnosed with Hyperthyroidism as a result of exposure to Defendants' AFFF products.

147.    Plaintiff Glenn Philip McCallister is a resident and citizen of Xenia, OH. Plaintiff Glenn Philip McCallister regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

148.    Plaintiff Glenn Philip McCallister was diagnosed with Hypothyroidism as a result of exposure to Defendants' AFFF products.

149.    Plaintiff Jacob Friesner is a resident and citizen of Baltimore, OH. Plaintiff Jacob Friesner regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

150.    Plaintiff Jacob Friesner was diagnosed with Papillary Thyroid Carcinoma as a result of exposure to Defendants' AFFF products.

151.    Plaintiff Jake D. Bozza is a resident and citizen of Fredericksburg, VA. Plaintiff Jake D. Bozza regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

152.    Plaintiff Jake D. Bozza was diagnosed with Hypothyroidism as a result of exposure to Defendants' AFFF products.

153.    Plaintiff James Goodman is a resident and citizen of Centerville, IA. Plaintiff James Goodman regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

154.    Plaintiff James Goodman was diagnosed with Renal Cell Carcinoma as a result of exposure to Defendants' AFFF products.

155.    Plaintiff James Vogelman is a resident and citizen of Philadelphia, PA. Plaintiff James Vogelman regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

156.    Plaintiff James Vogelman was diagnosed with Testicular Cancer as a result of exposure to Defendants' AFFF products.

157.    Plaintiff Jay Burke is a resident and citizen of Lumberton, TX. Plaintiff Jay Burke regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

158.    Plaintiff Jay Burke was diagnosed with Hypothyroidism as a result of exposure to Defendants' AFFF products.

159.    Plaintiff Jeffrey J. Toma is a resident and citizen of Syracuse, UT. Plaintiff Jeffrey J. Toma regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

160.    Plaintiff Jeffrey J. Toma was diagnosed with Hypothyroidism and Graves Disease as a result of exposure to Defendants' AFFF products.

161.    Plaintiff Jennifer M. Pemp is a resident and citizen of Hubert, NC. Plaintiff Jennifer M. Pemp regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

162.    Plaintiff Jennifer M. Pemp was diagnosed with Hypothyroidism as a result of exposure to Defendants' AFFF products.

163.    Plaintiff John Rowley is a resident and citizen of Mount Dora, FL. Plaintiff John Rowley regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

164.    Plaintiff John Rowley was diagnosed with Hypothyroidism as a result of exposure to Defendants' AFFF products.

165.    Plaintiff John Shea is a resident and citizen of Plattsburgh, NY. Plaintiff John Shea regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

166.    Plaintiff John Shea was diagnosed with Testicular Cancer as a result of exposure to Defendants' AFFF products.

167.    Plaintiff Johnny Johnson is a resident and citizen of China Grove, NC. Plaintiff Johnny Johnson regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

168.    Plaintiff Johnny Johnson was diagnosed with Hypothyroidism as a result of exposure to Defendants' AFFF products.

169.     Plaintiff Julio Gonzalez is a resident and citizen of Phoenix, AZ. Plaintiff Julio Gonzalez regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

170.     Plaintiff Julio Gonzalez was diagnosed with Testicular Cancer as a result of exposure to Defendants' AFFF products.

171.     Plaintiff Katie Ann Hobbs is a resident and citizen of Brookings, OR. Plaintiff Katie Ann Hobbs regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

172.     Plaintiff Katie Ann Hobbs was diagnosed with Hypothyroidism as a result of exposure to Defendants' AFFF products.

173.     Plaintiff Kenneth Casper is a resident and citizen of Ellenwood, GA. Plaintiff Kenneth Casper regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

174.     Plaintiff Kenneth Casper was diagnosed with Thyroid Cancer as a result of exposure to Defendants' AFFF products.

175.     Plaintiff Kenneth Kline is a resident and citizen of Frostburg, MD. Plaintiff Kenneth Kline regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

176.     Plaintiff Kenneth Kline was diagnosed with Rt Renal Cell Carcinoma as a result of exposure to Defendants' AFFF products.

177.     Plaintiff Kristina M. Summers is a resident and citizen of Sullivan, MO. Plaintiff Kristina M. Summers regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

178.    Plaintiff Kristina M. Summers was diagnosed with Papillary Thyroid Carcinoma as a result of exposure to Defendants' AFFF products.

179.    Plaintiff Larry Douglas Johnson is a resident and citizen of Selbyville, DE. Plaintiff Larry Douglas Johnson regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

180.    Plaintiff Larry Douglas Johnson was diagnosed with Hypothyroidism as a result of exposure to Defendants' AFFF products.

181.    Plaintiff Lonny Bartz is a resident and citizen of Warrenton, MO. Plaintiff Lonny Bartz regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

182.    Plaintiff Lonny Bartz was diagnosed with Hyperparathyroidism as a result of exposure to Defendants' AFFF products.

183.    Plaintiff Matthew Killen is a resident and citizen of Miami, FL. Plaintiff Matthew Killen regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

184.    Plaintiff Matthew Killen was diagnosed with Ulcerative colitis as a result of exposure to Defendants' AFFF products.

185.    Plaintiff Melissa Rolli is a resident and citizen of Monument, CO. Plaintiff Melissa Rolli regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

186.    Plaintiff Melissa Rolli was diagnosed with Thyroid Cancer follicular variant as a result of exposure to Defendants' AFFF products.

187.    Plaintiff Michael Arlan Ray Brown is a resident and citizen of Norman, OK. Plaintiff Michael Arlan Ray Brown regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

188.    Plaintiff Michael Arlan Ray Brown was diagnosed with Hypothyroidism as a result of exposure to Defendants' AFFF products.

189.    Plaintiff Michael J. Roberts is a resident and citizen of Sparta, WI. Plaintiff Michael J. Roberts regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

190.    Plaintiff Michael J. Roberts was diagnosed with Hypothyroidism as a result of exposure to Defendants' AFFF products.

191.    Plaintiff Nathaniel Dwight Maling is a resident and citizen of Navarre, FL. Plaintiff Nathaniel Dwight Maling regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

192.    Plaintiff Nathaniel Dwight Maling was diagnosed with Hypothyroidism as a result of exposure to Defendants' AFFF products.

193.    Plaintiff Paul Akerlund is a resident and citizen of Camas, WA. Plaintiff Paul Akerlund regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

194.    Plaintiff Paul Akerlund was diagnosed with Testicular Cancer as a result of exposure to Defendants' AFFF products.

195.    Plaintiff Paul Cruz is a resident and citizen of Findlay, OH. Plaintiff Paul Cruz regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

196.    Plaintiff Paul Cruz was diagnosed with Hypothyroidism as a result of exposure to Defendants' AFFF products.

197.    Plaintiff Paul E. Rine is a resident and citizen of Mesa, AZ. Plaintiff Paul E. Rine regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

198.    Plaintiff Paul E. Rine was diagnosed with Testicular Cancer as a result of exposure to Defendants' AFFF products.

199.    Plaintiff Peter Koch is a resident and citizen of Minneapolis, MN. Plaintiff Peter Koch regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

200.    Plaintiff Peter Koch was diagnosed with Renal Cell Carcinoma as a result of exposure to Defendants' AFFF products.

201.    Plaintiff Quinn C. Fierro is a resident and citizen of Goleta, CA. Plaintiff Quinn C. Fierro regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

202.    Plaintiff Quinn C. Fierro was diagnosed with Hypothyroidism, Hashimoto's as a result of exposure to Defendants' AFFF products.

203.    Plaintiff Randy Robinson is a resident and citizen of Holiday, FL. Plaintiff Randy Robinson regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

204.    Plaintiff Randy Robinson was diagnosed with Hypothyroidism as a result of exposure to Defendants' AFFF products.

205.    Plaintiff Richard Speich is a resident and citizen of Midland, MI. Plaintiff Richard Speich regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

206.    Plaintiff Richard Speich was diagnosed with Hypothyroidism as a result of exposure to Defendants' AFFF products.

207.    Plaintiff Richard W. Craig is a resident and citizen of Owenton, KY. Plaintiff Richard W. Craig regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

208.    Plaintiff Richard W. Craig was diagnosed with Hypothyroidism as a result of exposure to Defendants' AFFF products.

209.    Plaintiff Robert Braden is a resident and citizen of Wheeling, WV. Plaintiff Robert Braden regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

210.    Plaintiff Robert Braden was diagnosed with Hypothyroidism as a result of exposure to Defendants' AFFF products.

211.    Plaintiff Robert J. Osborn is a resident and citizen of Bangs, TX. Plaintiff Robert J. Osborn regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

212.    Plaintiff Robert J. Osborn was diagnosed with Hypothyroidism as a result of exposure to Defendants' AFFF products.

213.     Plaintiff Robert Wagner is a resident and citizen of Johnson Creek, WI. Plaintiff Robert Wagner regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

214.     Plaintiff Robert Wagner was diagnosed with Ulcerative Colitis as a result of exposure to Defendants' AFFF products.

215.     Plaintiff Se Young Oh is a resident and citizen of Fullerton, CA. Plaintiff Se Young Oh regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

216.     Plaintiff Se Young Oh was diagnosed with Thyroid Cancer as a result of exposure to Defendants' AFFF products.

217.     Plaintiff Stephanie A. Hamilton is a resident and citizen of High Point, NC. Plaintiff Stephanie A. Hamilton regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

218.     Plaintiff Stephanie A. Hamilton was diagnosed with Thyroid Cancer as a result of exposure to Defendants' AFFF products.

219.     Plaintiff Tatyana Rameau is a resident and citizen of Pembroke Pines, FL. Plaintiff Tatyana Rameau regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

220.     Plaintiff Tatyana Rameau was diagnosed with Acquired Hypothyroidism and Hashimoto's Disease as a result of exposure to Defendants' AFFF products.

221.     Plaintiff Thomas Griffin is a resident and citizen of East Stroudsburg, PA. Plaintiff Thomas Griffin regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

222.    Plaintiff Thomas Griffin was diagnosed with Hypothyroidism as a result of exposure to Defendants' AFFF products.

223.    Plaintiff Tiffany Tomaso-Kelly is a resident and citizen of Vinita, OK. Plaintiff Tiffany Tomaso-Kelly regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

224.    Plaintiff Tiffany Tomaso-Kelly was diagnosed with Hypothyroidism as a result of exposure to Defendants' AFFF products.

225.    Plaintiff Timothy McChesney is a resident and citizen of Russell, PA. Plaintiff Timothy McChesney regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

226.    Plaintiff Timothy McChesney was diagnosed with Thyroid Cancer as a result of exposure to Defendants' AFFF products.

227.    Plaintiff Todd Collins is a resident and citizen of Ankeny, IA. Plaintiff Todd Collins regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

228.    Plaintiff Todd Collins was diagnosed with Ulcerative Colitis as a result of exposure to Defendants' AFFF products.

229.    Plaintiff Todd W. Fick is a resident and citizen of Cumming, IA. Plaintiff Todd W. Fick regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

230.    Plaintiff Todd W. Fick was diagnosed with Hypoparathyroidism as a result of exposure to Defendants' AFFF products.

231.    Plaintiff Ysmael Ramos is a resident and citizen of San Angelo, TX. Plaintiff Ysmael Ramos regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

232.    Plaintiff Ysmael Ramos was diagnosed with Hypothyroidism as a result of exposure to Defendants' AFFF products.

233.    Plaintiff Diamond Biaselli is a resident and citizen of Fort Pierce, FL. Plaintiff Diamond Biaselli regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during their working career as a military and/or civilian firefighter.

234.    Plaintiff Diamond Biaselli was diagnosed with Hypothyroidism as a result of exposure to Defendants' AFFF products.

**Defendants**

235. Defendants are designers, marketers, developers, manufacturers, distributors, releasers, instructors, promotors and sellers of PFAS-containing AFFF products or underlying PFAS containing chemicals used in AFFF production. The following Defendants, at all times relevant to this lawsuit, manufactured, designed, marketed, distributed, released, instructed, promoted and/or otherwise sold (directly or indirectly) PFAS-containing AFFF products to various locations for use in fighting Class B fires such that each Defendant knew or should have known said products would be delivered to areas for active use by Plaintiffs during the course of training and firefighting activities.

236. Defendant, 3M Company, f/k/a Minnesota Mining and Manufacturing Company, ("3M"), is a Delaware corporation and does business throughout the United States. 3M has its principal place of business at 3M Center, St. Paul, Minnesota 55133.

237. 3M designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

238. Defendant AGC Chemicals Americas, Inc. ("AGC") is a Delaware corporation and does business throughout the United States. AGC has its principal place of business at 55 E. Uwchlan Ave., Suite 201, Exton, Pennsylvania 19341.

239. AGC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

240. Defendant Amerex Corporation ("Amerex") is an Alabama corporation and does business throughout the United States. Amerex has its principal place of business at 7595 Gadsden Highway, Trussville, Alabama 35173.

241. Amerex designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

242. Defendant Archroma U.S. Inc. ("Archroma") is a North Carolina company and does business throughout the United States. Archroma has its principal place of business at 5435 77 Center Drive, #10 Charlotte, North Carolina 28217. Upon information and belief, Archroma was formed in 2013 as part of the acquisition of Clariant Corporation's Textile Chemicals, Paper Specialties and Emulsions business by SK Capital Partners.

243. Archroma designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

244. Defendant Arkema, Inc. ("Arkema") is a Pennsylvania corporation and does business throughout the United States. Arkema has its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Upon information and belief, assets of Arkema's fluorochemical business were purchased by Defendant Dupont in 2002.

245. Arkema designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

246. Defendant BASF Corporation ("BASF") is a Delaware corporation and does business throughout the United States. BASF has its principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932.

247. BASF designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing

PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

248. Defendant Buckeye Fire Equipment Company ("Buckeye") is an Ohio corporation and does business throughout the United States. Buckeye has its principal place of business at 110  Kings Road, Mountain, North Carolina 28086.

249. Buckeye designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject  of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed,  released, trained users, produced instructional materials, promoted, sold and/or otherwise handled  and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use  in firefighting.

250. Defendant Carrier Global Corporation ("Carrier") is a Delaware corporation and does business throughout the United States. Carrier has its principal place of business at 13995 Pasteur  Boulevard, Palm Beach Gardens, Florida 33418. Upon information and belief, Carrier was formed  in 2020 and is the parent company of Kidde-Fenwal, Inc., a manufacturer of AFFF.

251. Carrier designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF  containing PFAS that are used in firefighting training and response exercises which

are the subject  of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled  and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use  in firefighting.

252. Defendant ChemDesign Products, Inc. ("ChemDesign") is a Texas corporation and does business throughout the United States. ChemDesign has its principal place of business at 2 Stanton  Street, Marinette, Wisconsin 54143.

253. ChemDesign designed, marketed, developed, manufactured, distributed, released, trained  users, produced instructional materials, promoted, sold and/or otherwise handled  and/or used  AFFF containing PFAS that are used in firefighting training and response exercises which are the  subject  of  this  Complaint. Further,  defendant designed, marketed, developed, manufactured,  distributed, released, trained users, produced instructional materials, promoted, sold and/or  otherwise handled  and/or used underlying chemicals and/or products added to AFFF which  contained PFAS for use in firefighting.

254. Defendant Chemguard, Inc. ("Chemguard") is a Wisconsin corporation and does business throughout the United States. Chemguard has its principal place of business at One Stanton Street,  Marinette, Wisconsin 54143.

255. Chemguard designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject  of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed,  released, trained users, produced instructional materials,

promoted, sold and/or otherwise handled  and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use  in firefighting.

256. Defendant Chemicals, Inc. ("Chemicals") is a Texas corporation and does business throughout the United States. Chemicals has its principal place of business at 12321 Hatcherville  Road, Baytown, Texas 77521.

257. Chemicals designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used  AFFF containing PFAS that are used in firefighting training and response exercises which are the  subject of this Complaint. Further, defendant designed, marketed, developed,  manufactured,  distributed, released, trained users, produced instructional materials, promoted, sold and/or  otherwise handled and/or used underlying chemicals and/or products added to AFFF which  contained PFAS for use in firefighting.

258. Defendant Chemours Company FC, LLC ("Chemours FC"), is a Delaware corporation and does business throughout the United States. Chemours has its principal place of business at 1007  Market Street, Wilmington, Delaware 19899. Chemours FC is a subsidiary of The Chemours  Company.

259. Chemours FC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed,  developed, manufactured, distributed, released, trained users, produced instructional materials,   promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added  to AFFF which contained PFAS for use in firefighting.

260. Defendant Chubb Fire, Ltd. ("Chubb") is a foreign private limited company, with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ. Upon information and belief,   Chubb is registered in the United Kingdom with a registered number of 134210. Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but   not limited to, Chubb Fire & Security Ltd., Chubb Security, PLC, Red Hawk Fire & Security,  LLC, and/or Chubb National Foam, Inc.

261. Chubb Fire designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed,  developed, manufactured, distributed, released, trained users, produced instructional materials,   promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added   to AFFF which contained PFAS for use in firefighting.

262. Defendant Clariant Corporation ("Clariant") is a New York corporation and does business throughout the United States. Clariant has its principal place of business at 4000 Monroe Road,  Charlotte, North Carolina 28205.

263. Clariant designed, marketed, developed, manufactured, distributed, released, trained users,  produced instructional materials, promoted, sold and/or otherwise handled and/or used  AFFF   containing PFAS that are used in firefighting training and response exercises which are the subject   of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed,   released, trained users, produced instructional materials, promoted, sold and/or otherwise handled   and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use   in firefighting.

264. Defendant Corteva, Inc. ("Corteva") is a Delaware Corporation that conducts business throughout the United States. Its principal place of business is Chestnut Run Plaza 735, Wilmington, Delaware 19805. Corteva is the successor-in-interest to Dupont Chemical Solutions  Enterprise.

265. Corteva designed, marketed, developed, manufactured, distributed, released, trained users,  produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing  PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed,  manufactured, distributed, released, trained users, produced instructional materials, promoted, sold   and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which   contained PFAS for use in firefighting.

266. Defendant Deepwater Chemicals, Inc. ("Deepwater") is a Delaware corporation and does business  throughout the United States. Deepwater's principal place of business is at 196122 E  County Road 735, Woodward, Oklahoma 73801.

267. Deepwater designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used  AFFF containing PFAS that are used in firefighting training and response exercises which are the   subject  of  this  Complaint.  Further,  defendant  designed,  marketed, developed,  manufactured,  distributed, released, trained users, produced instructional materials, promoted, sold and/or  otherwise handled and/or used underlying chemicals and/or products added to AFFF which  contained PFAS for use in firefighting.

268. Defendant Du Pont de Nemours Inc. (f/k/a DowDuPont, Inc.) ("DowDuPont"), is a Delaware corporation and does business throughout the United States. DowDuPont,

has its principal place of business at 1007 Market Street, Wilmington, Delaware 19899 and 2211 H.H. Dow Way, Midland, Michigan 48674. DowDupont was created in 2015 to transfer Chemours and DuPont liabilities for manufacturing and distributing flurosurfactants to AFFF manufacturers.

269. DowDuPont designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

270. Defendant Dynax Corporation ("Dynax") is a New York corporation that conducts business throughout the United States. Its principal place of business is 103 Fairview Park Drive, Elmsford, New York, 10523-1544.

271. Dynax designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

272. Defendant E. I. du Pont de Nemours and Company ("DuPont"), is a Delaware corporation and does business throughout the United States. DuPont has its principal place of business at 1007 Market Street, Wilmington, Delaware 19898.

273. DuPont designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

274. Defendant Kidde P.L.C., Inc. ("Kidde P.L.C.") is a foreign corporation organized and existing under the laws of the State of Delaware and does business throughout the United States. Kidde P.L.C. has its principal place of business at One Carrier Place, Farmington, Connecticut 06034. Upon information and belief, Kidde PLC was formerly known as Williams Holdings, Inc. and/or Williams US, Inc.

275. Kidde P.L.C. designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

276. Defendant Nation Ford Chemical Company ("Nation Ford") is a South Carolina company and does business throughout the United States. Nation Ford has its principal place of business at 2300 Banks Street, Fort Mill, South Carolina 29715.

277. Nation Ford designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF

containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

278. Defendant National Foam, Inc. ("National Foam") is a Delaware corporation and does business throughout the United States. National Foam has its principal place of business at 141 Junny Road, Angier, North Carolina, 27501.

279. National Foam designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

280. Defendant The Chemours Company ("Chemours"), is a Delaware corporation and does business throughout the United States. Chemours has its principal place of business 1007 Market Street, Wilmington, Delaware 19898. Upon information and belief, Chemours was spun off from DuPont in 2015 to assume PFAS related liabilities.

281. Chemours designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced

instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

282. Defendant Tyco Fire Products, LP, as successor-in-interest to The Ansul Company ("Tyco"), is a Delaware limited partnership and does business throughout the United States. Tyco has its principal place of business at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19466. Tyco manufactured and currently manufactures the Ansul brand of products, including Ansul brand AFFF containing PFAS.

283. Tyco is the successor in interest to the corporation formerly known as The Ansul Company ("Ansul"). At all times relevant, Tyco/Ansul designed, marketed, developed, manufactured, distributed released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

284. Defendant United Technologies Corporation ("United Technologies") is a foreign corporation organized and existing under the laws of the State of Delaware and does business throughout the United States. United Technologies has its principal place of business at 8 Farm Springs Road, Farmington, Connecticut 06032.

285. United Technologies designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further,

defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

286. Defendant UTC Fire & Security Americas Corporation, Inc. (f/k/a GE Interlogix, Inc.) ("UTC") is a North Carolina corporation and does business throughout the United States. UTC has principal place of business at 3211 Progress Drive, Lincolnton, North Carolina 28092. Upon information and belief, Kidde-Fenwal, Inc. is part of the UTC Climate Control & Security unit of United Technologies Corporation.

287. UTC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

288. Defendant Allstar Fire Equipment is a California corporation ("Allstar") and does business throughout the United States. Allstar has its principal place of business at 12328 Lower Azusa Road, Arcadia, California 91006.

289. Allstar developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

290. Defendant Fire-Dex, LLC ("Fire-Dex") is a Delaware corporation and does business throughout the United States. Fire-Dex has its principal place of business at 780 South Progress  Drive, Medina, Ohio 44256.

291. Fire-Dex developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

292. Defendant Globe Manufacturing Company LLC ("Globe") is a New Hampshire corporation and does business throughout the United States. Globe has its principal place of  business at 37 Loudon Road, Pittsfield, New Hampshire 03263.

293. Globe developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

294. Defendant Honeywell Safety Products USA, Inc. ("Honeywell") is a Delaware corporation  and does business throughout the United States. Honeywell has its principal place of business at  300 South Tryon Street Suite 500, Charlotte, North Carolina 28202.

295. Honeywell developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

296. Defendant Lion Group, Inc. ("Lion") is an Ohio corporation and does business throughout the United States. Lion has its principal place of business at 7200 Poe Avenue, Suite 400 Dayton,  Ohio, 45414.

297. Lion developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

298. Defendant Mallory Safety and Supply LLC. ("Mallory") is a Washington corporation and does business throughout the United States. Mallory has its principal place of business at 1040  Industrial Way, Longview, Washington, 98632.

299. Mallory developed, manufactured, marketed, distributed, released, sold, and/or used PFAS,  PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

300. Defendant Mine Safety Appliances Co., Inc. ("MSA") is a Pennsylvania corporation and  does business throughout the United States. MSA has its principal place of business at 1000  Cranberry Woods Drive, Cranberry Township, Pennsylvania, 16066.

301. MSA developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

302. Defendant Municipal Emergency Services, Inc. ("MES") is a Nevada corporation and does  business throughout the United States. MES has its principal place of business at 12 Turnberry  Lane, Sandy Hook, Connecticut 06482.

303. MES developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

304. Defendant PBI Performance Products, Inc. ("PBI") is a Delaware corporation and does business throughout the United States. PBI has its principal place of business at 9800-D Southern  Pine Boulevard, Charlotte, North Carolina 28273.

305. PBI developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

306. Defendant Southern Mills, Inc. ("Southern Mills") is a Georgia corporation and does business throughout the United States. Southern Mills has its principal place of business at 6501  Mall Boulevard, Union City, Georgia 30291.

307. Southern Mills developed, manufactured, marketed, distributed, released, sold, and/or used  PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

308. Defendant Stedfast USA, Inc. ("Stedfast") is a Delaware corporation and does business throughout the United States. Stadfast has its principal place of business at 800 Mountain View  Drive, Piney Flats, Tennessee 37686.

309. Stedfast developed, manufactured, marketed, distributed, released, sold, and/or used PFAS,  PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

310. Defendant W.L. Gore & Associates Inc. ("Gore") is a Delaware corporation and does business throughout the United States. Gore has its principal place of business at 1901 Barksdale  Road, Newark, Delaware 19711.

311. Gore developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

312. When reference is made in this Complaint to any act or omission of any of the Defendants, it shall be deemed that the officers, directors, agents, employees, or representatives of the  Defendants committed or authorized such act or omission, or failed to adequately supervise  or properly control or direct their employees while engaged in the  management,  direction,   operation, or control of the affairs of Defendants, and did so while acting within the scope of their  duties, employment or agency.

313. The term "AFFF Defendant" or "AFFF Defendants" refers to all Defendants named herein who designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. jointly and severally, unless otherwise stated.

## FACTUAL ALLEGATIONS

314. Aqueous Film-Forming Foam ("AFFF") is a combination of chemicals used to extinguish hydrocarbon fuel-based fires.

315. AFFF-containing fluorinated surfactants have better firefighting capabilities than water due to their surfactant-tension lowering properties which allow the compound(s) to extinguish fire by smothering, ultimately starving it of oxygen.

316. AFFF is a Class-B firefighting foam. It is mixed with water and used to extinguish fires that are difficult to fight, particularly those that involve petroleum or other flammable liquids.

317. AFFF Defendants designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled AFFF containing toxic PFAS or underlying PFAS containing chemicals used in AFFF production that were used by entities around the country, including military, county, and municipal firefighting departments.

318. AFFF Defendants have each designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, sold, and/or otherwise handled and/or used AFFF containing PFAS, in such a way as to cause the

contamination of Plaintiffs' blood and/or body with PFAS, and the resultant biopersistence and bioaccumulation of such PFAS in the blood and/or body of Plaintiffs.

319. AFFF was introduced commercially in the mid-1960s and rapidly became the primary firefighting foam in the United States and in other parts of the world. It contains PFAS, which are highly fluorinated synthetic chemical compounds whose family include PFOS and PFOA.

320. PFAS are a family of chemical compounds containing fluorine and carbon atoms.

321. PFAS have been used for decades in the manufacture of AFFF. The PFAS family of chemicals are entirely human-made and do not naturally occur or otherwise exist.

322. Prior to commercial development and large-scale manufacture and use of AFFF containing PFAS, no such PFAS had been found or detected in human blood.

   a. **AFFF / PFAS Hazardous Effects on Humans**

323. AFFF and its components are associated with a wide variety of adverse health effects in humans.

324. Exposure to AFFF Defendants' products has been linked to serious medical conditions including, but not limited to, kidney cancer, testicular cancer, liver cancer, testicular tumors,

pancreatic cancer, prostate cancer, leukemia, lymphoma, bladder cancer, thyroid disease and infertility.

325. By at least the end of the 1960s, animal toxicity testing performed by some Defendants manufacturing and/or using PFAS indicated that exposure to such materials, including at least PFOA, resulted in various adverse health effects among multiple species of

laboratory animals,  including toxic effects to the liver, testes, adrenals, and other organs and bodily systems.

326. By at least the end of the 1960s, additional research and testing performed by some Defendants manufacturing and/or using PFAS indicated that such materials, including at least  PFOA, because of their  unique chemical structure, were resistant to environmental degradation  and would persist in the environment essentially unaltered if allowed to enter the environment.

327. By at least the end of the 1970s, additional research and testing performed by some Defendants manufacturing and/or using PFAS indicated that one or more such materials, including  at least PFOA and PFOS, because of their unique chemical structure, would bind to proteins in the  blood of animals and humans exposed to such materials where such materials would remain and  persist over long periods of time and would accumulate in  the blood/body of the exposed  individuals with each additional exposure.

328. By at least the end of the 1980s, additional research and testing performed by some Defendants manufacturing and/or using PFAS indicated that at least one such PFAS, PFOA, had  caused Leydig cell (testicular) tumors in a chronic cancer study in rats, resulting in at least one  such Defendant, DuPont, classifying such PFAS internally as a confirmed animal carcinogen and   possible human carcinogen.

329. It was understood by AFFF Defendants by at least the end of the 1980s that a chemical that caused cancer in animal studies must be presumed to present a cancer risk to humans, unless the precise mechanism of action by which the tumors were caused was known and would not occur in  humans.

330. By at least the end of the 1980s, scientists had not determined the precise mechanism of action by which any PFAS caused tumors. Therefore, scientific principles of carcinogenesis classification mandated AFFF Defendants presume any such PFAS material that caused tumors in animal studies could present a potential cancer risk to exposed humans.

331. By at least the end of the 1980s, additional research and testing performed by some Defendants manufacturing and/or using PFAS, including at least DuPont, indicated that elevated incidence of certain cancers and other adverse health effects, including elevated liver enzymes and birth defects, had been observed among workers exposed to such materials, including at least PFOA, but such data was not published, provided to governmental entities as required by law, or otherwise publicly disclosed at the time.

332. By at least the end of the 1980s, some Defendants, including at least 3M and DuPont, understood that, not only did PFAS, including at least PFOA and PFOS, get into and persist and accumulate in the human blood and in the human body, but that once in the human body and blood, particularly the longer-chain PFAS, such as PFOS and PFOA, had a long half-life. Meaning that it would take a very long time before even half of the material would start to be eliminated, which allowed increasing levels of the chemicals to build up and accumulate in the blood and/or body of exposed individuals over time, particularly if any level of exposure continued.

333. By at least the end of the 1990s, additional research and testing performed by some Defendants manufacturing and/or using PFAS, including at least 3M and DuPont, indicated that at least one such PFAS, PFOA, had caused a triad of tumors (Leydig cell (testicular), liver, and pancreatic) in a second chronic cancer study in rats.

334. By at least the end of the 1990s, the precise mechanism(s) of action by which any PFAS caused each of the tumors found in animal studies had still not been identified, mandating that AFFF Defendants continue to presume that any such PFAS that caused such tumors in animal studies could present a potential cancer risk to exposed humans.

335. By at least 2010, additional research and testing performed by some Defendants manufacturing and/or using PFAS, including at least 3M and DuPont, revealed multiple potential adverse health impacts among workers exposed to such PFAS, including at least PFOA, such as increased cancer incidence, hormone changes, lipid changes, and thyroid and liver impacts.

336. When the United States Environmental Protection Agency ("USEPA") and other state and local public health agencies and officials first began learning of PFAS exposure in the United States and potential associated adverse health effects, AFFF Defendants repeatedly assured and represented to such entities and the public that such exposure presented no risk of harm and were of no significance.

337. After the USEPA and other entities began asking Defendants to stop manufacturing and/or using certain PFAS, AFFF Defendants began manufacturing and/or using and/or began making and/or using more of certain other and/or "new" PFAS, including PFAS materials with six or fewer carbons, such as GenX (collectively "Short-Chain PFAS").

338. AFFF Defendants manufacturing and/or using Short-Chain PFAS, including at least DuPont and 3M, are aware that one or more such Short-Chain PFAS materials also have been found in human blood.

339. By at least the mid-2010s, AFFF Defendants, including at least DuPont and Chemours, were aware that at least one Short-Chain PFAS had been found to cause the same triad of

tumors (Leydig (testicular), liver, and pancreatic) in a chronic rat cancer study as had been found in a chronic rat cancer study with a non-Short-Chain PFAS.

340. Research and testing performed by and/or on behalf of AFFF Defendants making and/or using Short-Chain PFAS indicates that such Short-Chain PFAS materials present the same, similar, and/or additional risks to human health as had been found in research on other PFAS materials, including cancer risk.

341. Nevertheless, AFFF Defendants repeatedly assured and represented to governmental entities and the public (and continue to do so) that the presence of PFAS, including Short-Chain PFAS, in human blood at the levels found within the United States present no risk of harm and is of no legal, toxicological, or medical significance of any kind.

342. At all relevant times, AFFF Defendants, individually and/or collectively, possessed the resources and ability but have intentionally, purposefully, recklessly, and/or negligently chosen not to fund or sponsor any study, investigation, testing, and/or other research of any kind of the nature that AFFF Defendants claim is necessary to confirm and/or prove that the presence of any one and/or combination of PFAS in human blood causes any disease and/or adverse health impact of any kind in humans, presents any risk of harm to humans, and/or is of any legal, toxicological, or medical significance to humans, according to standards AFFF Defendants deem acceptable.

343. Even after an independent science panel, known as the "C8 Science Panel," publicly announced in the 2010s that human exposure to 0.05 parts per billion or more of one PFAS, PFOA, had "probable links" with certain human diseases, including kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, preeclampsia, and medically-diagnosed high cholesterol, AFFF Defendants repeatedly assured and represented to

governmental entities, their customers, and the   public (and continue to do so) that the presence of PFAS in human blood at the levels found within the United States presents no risk of harm and is of no legal, toxicological, or medical significance  of any kind, and have represented to and assured such governmental entities, their customers, and   the  public (and  continue  to  do  so)  that  the  work  of  the  independent  C8  Science  Panel  was inadequate.

344. At  all  relevant  times,  AFFF  Defendants  shared  and/or  should  have  shared  among themselves  all  relevant  information  relating  to  the  presence,  biopersistence,  and bioaccumulation   of   PFAS   in   human   blood   and   associated   toxicological, epidemiological,  and/or  other  adverse   effects and/or risks.

345. As of the present date, blood serum testing and analysis by AFFF Defendants, independent scientific researchers, and/or government entities has confirmed that PFAS materials are clinically   demonstrably present in approximately 99% of the current population of the United States.

346. There is no naturally-occurring "background," normal, and/or acceptable level or rate of  any PFAS in human blood, as all PFAS detected and/or present in human blood is present and/or  detectable  in such blood as a  direct and proximate  result of the  acts and/or omissions of  Defendants.

347. At  all  relevant  times,  Defendants,  through  their  acts  and/or  omissions,  controlled, minimized,  trivialized,  manipulated,  and/or  otherwise  influenced  the  information  that was   published in peer-review journals, released by any governmental entity, and/or otherwise made  available to the public relating to PFAS in human blood and any alleged

adverse impacts and/or risks associated therewith, effectively preventing Plaintiffs from discovering the existence and extent of any injuries/harm as alleged herein.

348. At all relevant times, Defendants, through their acts and/or omissions, took steps to attack, challenge, discredit, and/or otherwise undermine any scientific studies, findings, statements, and/or other information that proposed, alleged, suggested, or even implied any potential adverse health effects or risks and/or any other fact of any legal, toxicological, or medical significance associated with the presence of PFAS in human blood.

349. At all relevant times, Defendants, through their acts and/or omissions, concealed and/or withheld information from their customers, governmental entities, and the public that would have properly and fully alerted Plaintiffs to the legal, toxicological, medical, or other significance and/or risk from having any PFAS material in Plaintiffs' blood.

350. At all relevant times, Defendants encouraged the continued and even further increased use of PFAS by their customers and others, including but not limited to the manufacture, use, and release, of AFFF containing PFAS and/or emergency responder protection gear or equipment coated with materials made with or containing PFAS, and tried to encourage and foster the increased and further use of PFAS in connection with as many products/uses/and applications as possible, despite knowledge of the toxicity, persistence, and bioaccumulation concerns associated with such activities.

351. To this day, Defendants deny that the presence of any PFAS in human blood, at any level, is an injury or presents any harm or risk of harm of any kind, or is otherwise of any legal, toxicological, or medical significance.

352. To this day, Defendants deny that any scientific study, research, testing, or other work of any kind has been performed that is sufficient to suggest to the public that the presence of any PFAS material in human blood, at any level, is of any legal, toxicological, medical, or other significance.

353. Defendants, to this day, affirmatively assert and represent to governmental entities, their customers, and the public that there is no evidence that any of the PFAS found in human blood across the United States causes any health impacts or is sufficient to generate an increased risk of future disease sufficient to warrant diagnostic medical testing, often referring to existing studies or data as including too few participants or too few cases or incidents of disease to draw any scientifically credible or statistically significant conclusions.

354. Defendants were and/or should have been aware, knew and/or should have known, and/or foresaw or should have foreseen that their design, marketing, development, manufacture, distribution, release, training and response of users, production of instructional materials, sale and/or other handling and/or use of AFFF containing PFAS would result in the contamination of the blood and/or body of Plaintiffs with PFAS, and the biopersistence and bioaccumulation of such PFAS in their blood and/or body.

355. Defendants were and /or should have been aware, or knew and/or should have known, and/or foresaw or should have foreseen that allowing PFAS to contaminate the blood and/or body of Plaintiffs would cause injury, irreparable harm, and/or unacceptable risk of such injury and/or irreparable harm to Plaintiffs.

356. Defendants did not seek or obtain permission or consent from Plaintiffs before engaging in such acts and/or omissions that caused, allowed, and/or otherwise resulted in Plaintiffs'

exposure   to AFFF and the contamination of Plaintiffs' blood and/or body with PFAS materials, and resulting   biopersistence and bioaccumulation of such PFAS in their blood and/or body.

### B.    Defendants' History of Manufacturing and Selling AFFF

357. 3M began producing PFOS and PFOA by electrochemical fluorination in the 1940s.  In the  1960s, 3M used its fluorination process to develop AFFF.

358. 3M manufactured, marketed, and sold AFFF from the 1960s to the early 2000s.

359. National Foam and Tyco/Ansul began to manufacture, market, and sell AFFF in the 1970s.
360. Buckeye began to manufacture, market, and sell AFFF in the 2000s.

361. In 2000, 3M announced it was phasing out its manufacture of PFOS, PFOA, and related products, including AFFF. 3M, in its press release announcing the phase out, stated "our products   are safe," and that 3M's decision was "based on [its] principles of responsible  environment   management." 3M further stated that "the presence of these materials at [] very low levels does  not pose a human health or environmental risk." In communications with the EPA at that time,   3M also stated that it had "concluded that…other business opportunities were more deserving of   the company's energies and attention…"

362. Following 3M's exit from the AFFF market, the remaining AFFF Defendants continued to  manufacture and sell AFFF that contained PFAS and/or its precursors.

363. AFFF Defendants knew their customers warehoused large stockpiles of AFFF. In fact, AFFF Defendants marketed their AFFF products by touting its shelf-life. Even after AFFF  Defendants fully understood the toxicity of PFAS, and their impacts to the health of humans  following exposure, AFFF Defendants concealed the true nature of PFAS. While AFFF  Defendants phased out production or transitioned to other formulas,

they did not instruct their customers that they should not use AFFF that contained PFAS and/or their precursors. AFFF Defendants further did not act to get their harmful products off the market.

364. AFFF Defendants did not warn public entities, firefighter trainees who they knew would foreseeably come into contact with their AFFF products, or firefighters employed by either civilian and/or military employers that use of and/or exposure to AFFF Defendants' products containing PFAS and/or its precursors would pose a danger to human health

365. The Plaintiffs directly used, were exposed, and/or were given AFFF to help fight fires on a regular basis.

366. The Plaintiffs were never informed that this product was inherently dangerous. Nor were the Plaintiff warned about the known health risks associated with this product.

367. The Plaintiffs never received or were told to use any protective gear to guard against the known dangerous propensities of this product.

368. AFFF Defendants have known of the health hazards associated with AFFF and/or its compounds for decades and that in their intended and/or common use would harm human health.

369. Information regarding AFFF and its compounds were readily accessible to each of the above-referenced AFFF Defendants for decades because each is an expert in the field of AFFF manufacturing and/or the materials needed to manufacture AFFF, and each has detailed information and understanding about the chemical compounds that form AFFF products.

370. The AFFF Defendants' manufacture, distribution and/or sale of AFFF resulted in the Plaintiffs and other individuals who came in contact with the chemical to develop cancer.

371. The AFFF Defendants through their manufacturing, distribution and/or sale of AFFF, and through their involvement and/or participation in the creation of training and instructional materials and activities, knew, foresaw, and/or should have known and/or foreseen that the Plaintiffs and those similarly situated would be harmed.

372. The AFFF Defendants' products were unreasonably dangerous and the Defendants failed to warn of this danger.

### C.    PFAS-Containing Turnout Gear

373. During firefighting training and when responding to fires and performing fire extinguishment, firefighters wear turnouts that are intended to provide a degree of thermal, chemical, and biological protection for a firefighter. Turnout gear components include individual components such as a helmet, hood, jacket, pants and suspenders, boots, and gloves. Each component of the jacket and pants are made of an outer layer, as well as several inner layers that include a moisture barrier and thermal liner which are meant to protect the firefighter from ambient heat.

374. PFAS chemicals are used in turnout gear to impart heat, water, and stain resistance to the outer shell and moisture barrier of turnout gear.

375. A June 2020 study of turnout gear by researchers at the University of Notre Dame analyzed 30 new and used turnout jackets and pants originally marketed, distributed and sold in 2008, 2014, and 2017, by six turnout gear makers, including Defendants MSA, Globe, Lion and Honeywell and found high levels of PFAS in turnout gear worn, used, or handled by firefighters, including the Firefighter Plaintiffs.

376. When exposed to heat, PFAS chemicals in the turnouts off-gas, break down, and degrade into highly mobile and toxic particles and dust, exposing firefighters to PFAS chemicals,

particles  and dust, including through skin contact/absorption, ingestion (e.g., hand-to-mouth contact) and/or  inhalation. Further firefighter exposure to these highly mobile and toxic materials occurs through   normal workplace activities, because particles or dust from their turnouts spread to fire vehicles   and fire stations, as well as firefighters' personal vehicles and homes.

377. Such workplace exposure to PFAS or PFAS-containing materials has been found to be toxic to humans. As far back as a July 31, 1980 internal memo, DuPont officials described  measures that were needed to prevent workplace exposure to PFOA, which they knew could  permeate all protective materials, and noted that PFOA's toxicity varied depending on the  exposure pathway, acknowledging that ingestion was "slightly toxic," dermal contact was "slightly    to moderately toxic" and inhalation was "highly toxic." The memo concluded "continued exposure  is not tolerable."

378. As alleged herein, the Firefighter Plaintiffs wear and/or wore turnouts in the ordinary course of performing their duties, as the turnouts were intended to be used and in a foreseeable  manner, which exposed them to significant levels of PFAS.

379. The Firefighter Plaintiffs did not know, and in the exercise of reasonable diligence could not have known, that the turnouts they wore or used in the course of performing their duties  contained PFAS or PFAS-containing materials, and similarly did not know and could not have  known that they routinely suffered exposure to PFAS or PFAS-containing materials in the turnouts  they wore or used in performing their duties. The turnout gear worn or used by the Firefighter  Plaintiffs did not and does not contain labeling information saying that the gear contains PFAS,  and similarly did not and does not warn the Firefighter Plaintiffs of the health risks associated with  exposure to PFAS.

380. Like fire departments across the country, many Plaintiffs only had one set of turnouts for years, and would wash their turnouts at home and/or in station machines along with their daily station wear uniforms.

## CAUSES OF ACTION

## COUNT I – NEGLIGENCE

381. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

382. Defendants had a duty to individuals, including the Plaintiffs, to exercise reasonable ordinary, and appropriate care in the manufacturing, design, labeling, packaging, testing, instruction, warning, selling, marketing, distribution, and training related to the AFFF product.

383. Defendants breached their duty of care and were negligent, grossly negligent, reckless and willful as described herein in the design, manufacture, labeling, warning, instruction, training, selling, marketing, and distribution of the AFFF products or underlying PFAS containing chemicals used in AFFF production in one or more of the following respects:

a. Failing to design the products so as to avoid an unreasonable risk of harm to individuals, including the Plaintiffs;

b. Failing to use reasonable care in the testing of the products so as to avoid an unreasonable risk of harm to individuals, including the Plaintiffs;

c. Failing to use appropriate care in inspecting the products so as to avoid an unreasonable risk of harm to individuals, including the Plaintiffs;

d. Failing to use appropriate care in instructing and/or warning the public as set forth herein of risks associated with the products, so as to avoid unreasonable risk of harm to individuals, including the Plaintiffs;

e.  Failing to use reasonable care in marketing, promoting, and advertising the products so as to avoid unreasonable risk of harm to individuals, including the Plaintiffs;

f.  Otherwise negligently or carelessly designing, manufacturing, marketing, distributing, warning; and

g.  In selling and or distributing a product which was inherently dangerous to the public;

384. As a direct and proximate result of Defendants' negligence, the Plaintiffs have been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss and damages including, but not limited to medical expenses, lost income, and/or other damages.

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT II – BATTERY

385. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

386. At all relevant times, Defendants possessed knowledge that the AFFF containing PFAS which they designed, engineered, manufactured, fabricated, sold, handled, released, trained users on, produced instructional materials for, used, and/or distributed were bio-persistent, bio- accumulative, toxic, potentially carcinogenic, and/or otherwise harmful/injurious and that their continued manufacture, use, sale, handling, release, and distribution would result in Plaintiffs having PFAS in Plaintiffs' blood, and the biopersistence and bioaccumulation of such PFAS in Plaintiffs' blood.

387. However, despite possessing such knowledge, Defendants knowingly, purposefully, and/or intentionally continued to engage in such acts and/or omissions, including but not limited to all such acts and/or omissions described in this Complaint, that continued to result in Plaintiffs accumulating PFAS in Plaintiffs' blood and/or body, and such PFAS persisting and accumulating in Plaintiffs' blood and/or body.

388. Defendants did not seek or obtain permission or consent from Plaintiffs to put or allow PFAS materials into Plaintiffs' blood and/or body, or to persist in and/or accumulate in Plaintiffs' blood and/or body.

389. Entry into, persistence in, and accumulation of such PFAS in Plaintiffs' body and/or blood without permission or consent is an unlawful and harmful and/or offensive physical invasion and/or contact with Plaintiffs' person and unreasonably interferes with Plaintiffs' rightful use and possession of Plaintiffs' blood and/or body.

390. At all relevant times, the PFAS present in the blood of Plaintiffs originated from Defendants' acts and/or omissions.

391. Defendants continue to knowingly, intentionally, and/or purposefully engage in acts and/or omissions that result in the unlawful and unconsented-to physical invasion and/or contact with Plaintiffs that resulted in persisting and accumulating levels of PFAS in Plaintiffs' blood.

392. Plaintiffs, and any reasonable person, would find the contact at issue harmful and/or offensive.

393. Defendants acted intentionally with the knowledge and/or belief that the contact, presence and/or invasion of PFAS with, onto and/or into Plaintiffs' blood serum, including its

persistence and accumulation in such serum, was substantially certain to result from those very acts and/or omissions.

394. Defendants' intentional acts and/or omissions resulted directly and/or indirectly in harmful contact with Plaintiffs' blood and/or body.

395. The continued presence, persistence, and accumulation of PFAS in the blood and/or body of Plaintiffs is offensive, unreasonable, and/or harmful, and thereby constitutes a battery.

396. The presence of PFAS in the blood and/or body of Plaintiffs altered the structure and/or function of such blood and/or body parts and resulted in cancer.

397. As a direct and proximate result of the foregoing acts and omissions, Plaintiffs suffered physical injury for which Defendants are therefore liable.

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT III – INADEQUATE WARNING

398. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

399. Defendants knew or should have known:

a) exposure to AFFF containing PFAS was hazardous to human health;

b) the manner in which they were designing, marketing, developing, manufacturing, distributing, releasing, training, instructing, promoting, and selling AFFF containing PFAS was hazardous to human health; and

c) the manner in which they were designing, marketing, developing, manufacturing, marketing, distributing, releasing, training, instructing, promotion and selling AFFF containing PFAS would result in the contamination of Plaintiffs' blood and/or body as a result of exposure.

400. Defendants had a duty to warn of the hazards associated with AFFF containing PFAS entering the blood and/or body of Plaintiffs because they knew of the dangerous, hazardous, and toxic properties of AFFF containing PFAS. Defendants failed to provide sufficient warning to purchasers that the use of their AFFF products would cause PFAS to be released and cause the exposure and bioaccumulation of these toxic chemicals in the blood and/or body of Plaintiffs.

401. Adequate instructions and warnings on the AFFF containing PFAS could have reduced or avoided these foreseeable risks of harm and injury to Plaintiffs. If Defendants provided adequate warnings:

a)  Plaintiffs could have and would have taken measures to avoid or lessen exposure; and

b)  end users and governments could have taken steps to reduce or prevent the release of PFASs into the blood and/or body of Plaintiffs. Defendants' failure to warn was a direct and proximate cause of Plaintiffs' injuries from PFAS that came from the use, storage, and disposal of AFFF containing PFAS. Crucially, Defendants' failure to provide adequate and sufficient warnings for the AFFF containing PFAS they designed, marketed, manufactured, distributed, released, promoted, and sold renders the AFFF a defective product.

402. Defendants were negligent in their failure to provide Plaintiffs with adequate warnings or instruction that the use of their AFFF products would cause PFAS to be released into the blood and/or body of Plaintiffs. As a result of Defendants' conduct and the resulting contamination, Plaintiffs suffered severe personal injuries by exposure to AFFF containing PFAS.

403. Defendants' negligent failure to warn directly and proximately caused the harm to and damages suffered by Plaintiffs.

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT IV – DESIGN DEFECT

404. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

405. Defendants knew or should have known:

a) exposure to AFFF containing PFAS is hazardous to human health;

b) the manner in which AFFF containing PFAS was designed, manufactured, marketed, distributed, and sold was hazardous to human health; and

c) the manner in which AFFF containing PFAS was designed, manufactured, marketed, distributed, and could and would release PFAS into Plaintiffs and cause the exposure and bioaccumulation of these toxic and poisonous chemicals in the blood and/or body of Plaintiffs.

406. Knowing of the dangerous and hazardous properties of the AFFF containing PFAS, Defendants could have designed, manufactured, marketed, distributed, and sold alternative designs or formulations of AFFF that did not contain hazardous and toxic PFAS. These alternative designs and formulations were already available, practical, and technologically feasible. The use of these alternative designs would have reduced or prevented reasonably foreseeable harm to Plaintiff caused by the Defendants' design, manufacture, marketing, distribution, and sale of AFFF containing hazardous and toxic PFAS.

407. The AFFF containing PFAS that was designed, manufactured, marketed, distributed, and sold by the Defendants was so hazardous, toxic, and dangerous to human health that

the act of designing, formulating, manufacturing, marketing, distributing, and selling this AFFF was unreasonably dangerous under the circumstances.

408. The AFFF designed, formulated, manufactured, marketed, distributed, and sold by Defendants was defectively designed and the foreseeable risk of harm could and would have been reduced or eliminated by the adoption of a reasonable alternative design that was not unreasonably dangerous. Defendants' defective design and formulation of AFFF containing PFAS was a direct and proximate cause of the contamination of the blood and/or body of Plaintiffs and the persistence and accumulation of PFAS in Plaintiffs' blood and/or body.

409. Defendants' defective design and formulation of AFFF containing PFAS caused the contamination described herein resulting in personal injuries to Plaintiffs. As a direct result of the harm and injury caused by Defendants' defective design and the contamination described herein, Plaintiffs have been exposed to AFFF containing PFAS and other toxic substances and has developed cancer.

410. Defendants' negligent failure to design a reasonably safe product directly and proximately caused the harm to and damages suffered by Plaintiffs.

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT V – STRICT LIABILITY (STATUTORY)

411. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

412. Plaintiffs asserts any and all remedies available under statutory causes of action from Plaintiffs' states for strict liability against each Defendant.

413. The Defendants were engaged in designing, manufacturing, marketing, selling, and distribution of AFFF .

414. The AFFF   was in a defective condition and unreasonably dangerous to users and/or consumers when designed, manufactured, marketed, sold, and/or distributed to the public by the Defendants.

415. As a direct and proximate result of the Defendants products' aforementioned defects, the Plaintiffs have been injured, sustained severe and permanent pain, suffering, disability,  impairment, loss of enjoyment of life, loss of care, comfort, economic loss and damages including,  but not limited to medical expenses, lost income, and other damages.

416. The Defendants are strictly liable in tort to the Plaintiffs for their wrongful conduct.

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for  such other and further relief as this Court may deem fit, just, and proper.

## COUNT VI – STRICT LIABILITY (RESTATEMENT)

417. Plaintiffs hereby incorporate by reference the allegations contained in the preceding  paragraphs of this Complaint as if restated in full herein.

418. The Plaintiffs bring strict product liability claims under the common law, Section 402A of  the Restatement of Torts (Second), and/or Restatement of Torts (Third) against Defendants.

419. As designed, manufactured, marketed, tested, assembled, equipped, distributed and/or sold  by the Defendants the AFFF   product was in a defective and unreasonably

dangerous condition when put to reasonably anticipated use to foreseeable consumers and users, including the Plaintiffs.

420. The Defendants had available reasonable alternative designs which would have made the AFFF product safer and would have most likely prevented the injuries and damages to the Plaintiffs, thus violating state law and the Restatement of Torts.

421. The Defendants failed to properly and adequately warn and instruct the Plaintiffs as to the proper safety and use of the Defendants product.

422. The Defendants failed to properly and adequately warn and instruct the Plaintiffs regarding the inadequate research and testing of the product.

423. The Defendants' products are inherently dangerous and defective, unfit and unsafe for their intended and reasonably foreseeable uses, and do not meet or perform to the expectations.

424. As a proximate result of the Defendants' design, manufacture, marketing, sale, and distribution of the products, the Plaintiffs have been injured and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, and economic damages.

425. By reason of the foregoing, the Defendants are strictly liable for the injuries and damages suffered by the Plaintiffs, caused by these defects in the AFFF product.

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## **COUNT VII – FRAUDULENT CONCEALMENT**

426. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

427. Throughout the relevant time period, Defendants knew that their products were defective and unreasonably unsafe for their intended purpose.

428. Defendants fraudulently concealed from and/or failed to disclose to or warn the Plaintiffs, and the public that their products were defective, unsafe, and unfit for the purposes intended, and  that they were not of merchantable quality.

429. Defendants were under a duty to the Plaintiffs and the public to disclose and warn of the  defective and harmful nature of the products because:

   a) Defendants were in a superior position to know the true quality, safety and efficacy of the  Defendants' products;

   b) Defendants knowingly made false claims about the safety and quality of the Defendants'  product in documents and marketing materials; and

   c) Defendants fraudulently and affirmatively concealed the defective nature of the  Defendants' products from the Plaintiffs.

430. The facts concealed and/or not disclosed by Defendants to the Plaintiffs were material facts that a reasonable person would have considered to be important in deciding whether or not to  purchase and/or use the Defendants' products.

431. Defendants intentionally concealed and/or failed to disclose the true defective nature of the  products so that the Plaintiffs would use the Defendants' products, the Plaintiffs justifiably acted  or relied upon, to Plaintiffs' detriment, the concealed and/or non-disclosed facts as evidenced by  Plaintiffs' use of the Defendants' products.

432. Defendants, by concealment or other action, intentionally prevented the Plaintiffs from acquiring  material information regarding the lack of safety and effectiveness of the

Defendants' products and are subject to the same liability to the Plaintiffs for Plaintiffs' pecuniary losses, as though Defendants had stated the non-existence of such material information regarding the Defendants' products' lack of safety and effectiveness and dangers and defects, and as though Defendants had affirmatively stated the non-existence of such matters that the Plaintiffs were thus prevented from discovering the truth. Defendants therefore have liability for fraudulent concealment under all applicable laws, including, inter alia, Restatement (Second) of Torts §550 (1977).

433. As a proximate result of Defendants' conduct, the Plaintiffs have been injured, and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT VIII – BREACH OF EXPRESS AND IMPLIED WARRANTIES

434. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

435. At all times relevant hereto, the Defendants manufactured, marketed, labeled, and sold the AFFF products that has been previously alleged and described herein.

436. At the time the Defendants designed, developed, marketed, sold, labeled, and distributed the AFFF products, the Defendants knew of the use for which it was intended, and implied and/or expressly warranted that the product was merchantable, safe, and fit for its intended purpose.

437. The Defendants warranted that the product was merchantable and fit for the particular purpose for which it was intended and would be reasonably safe. These warranties were breached,  and such breach proximately resulted in the injuries and damages suffered by the Plaintiffs.

438. The Plaintiffs are within the class of foreseeable users and reasonably relied upon Defendants' judgment, and the implied and/or express warranties in using the products.

439. The Defendants breached their implied and/or express warranties and did not meet the expectations for the performance of the product when used for its intended use and was neither of  merchantable quality nor safe for its intended use in that the product has a propensity to cause  serious injury, pain, and cancer.

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for  such other and further relief as this Court may deem fit, just, and proper.

## COUNT IX –
## WANTONNESS

440. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

441. Defendants and their employees, agents, officers, and representatives owed a duty of care to end users of their AFFF  products, including Plaintiffs.

442. Defendants breached the duty of care owed to the Plaintiffs.

443. The actions of Defendants and their employees, agents, officers, and representatives were willful and wanton and exhibited a reckless disregard for the life, health, and safety of the end  users of Defendants' AFFF  products, including Plaintiffs.

444. As a proximate and foreseeable consequent of the actions of Defendants, Plaintiffs were exposed to unreasonably dangerous toxic PFAS containing AFFF  , which caused Plaintiffs' injury.

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for  such other and further relief as this Court may deem fit, just, and proper.

### COUNT X  -  FRAUDULENT TRANSFER, 6 DEL. C. § 1304  (DUPONT DEFENDANTS)

445. Plaintiffs reallege  and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated herein.

446. Under Delaware Code Title 6, § 1304:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor,  whether the creditor's claim arose before or after the transfer was made or the  obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) With actual intent to hinder, delay or defraud any creditor of the debtor; or

(2) Without receiving a reasonably equivalent value in exchange for the transfer or  obligation, and the debtor:

a. Was engaged or was about to engage in a business or a transaction for  which the remaining assets of the debtor were unreasonably small in  relation to the business or transaction; or

b Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

447. The Plaintiffs are a "Creditor" possessing "Claims" against the DuPont Defendants as those terms are defined in Delaware Code Title 6, § 1301.

448. The DuPont Defendants have acted with actual intent to hinder, delay, and defraud DuPont's creditors.

449. Assets and liabilities were transferred between the DuPont Defendants, whereby certain DuPont Defendants did not receive a reasonably equivalent value in exchange for the transfer and they were engaged in or about to engage in a business for which the remaining assets were unreasonably small and/or they intended to incur or reasonably should have believed that they would incur debts beyond their ability to pay as the debts became due.

450. On information and belief, the DuPont Defendants engaged in a complicated restructuring of DuPont for the purpose of shielding assets from creditors such as the Plaintiffs, with claims related to PFAS contamination.

451. On information and belief, at the time of this restructuring, DuPont knew that its liabilities related to PFAS were likely in the billions of dollars.

452. In the initial step of restructuring, DuPont formed Chemours in 2015 as a wholly owned subsidiary. In July 2015, DuPont spun off Chemours, transferring DuPont's Performance Chemicals Unit along with a vast amount of environmental liabilities – including all those related to PFAS. As part of the transfer, Chemours transferred valuable assets to DuPont, including a $3.9 billion dividend to DuPont stockholders, for which Chemours incurred additional debt to pay.

453. On information and belief, the Chemours spin-off was not bargained at arm's length. At the time of the spin off, Chemours had a separate board, but was controlled by DuPont employees.

454. On information and belief, DuPont transferred to Chemours a disproportionately small allocation of assets to cover debts and liabilities. Dupont transferred less than 20% of its business line, but over 66% of its environmental liabilities and 90% of DuPont's pending

litigation. These liabilities were taken on by Chemours in addition to the $3.9 billion in debt it assumed to pay a dividend to DuPont's shareholders. As a result, Chemours did not receive reasonably equivalent value in exchange for the transfer of debts and obligations from DuPont.

455. In its valuation, DuPont purposefully undervalued the potential maximum liability from the PFAS liabilities it transferred to Chemours. At the time of the spin-off, DuPont had been sued, threatened with lawsuits, and had knowledge of forthcoming litigation regarding DuPont's liabilities for damages and injuries from the manufacture, sale, and worldwide use of PFAS- containing products. DuPont and Chemours knew or should have known that Chemours would incur debts beyond its ability to pay as they came due.

456. In further restructuring, DuPont sought to further protect its assets from PFAS liabilities by first merging itself with Dow and then separating its now comingled assets among three newly created companies: DowDuPont, Inc. ("DowDuPont") (which later became New DuPont); Dow, Inc. ("New Dow"), and Corteva.

457. As a result of the merger, Dow and DuPont became wholly owned subsidiaries of DowDupont. On information and belief, after the merger, DowDupont underwent a hidden internal reorganization with the net effect being the transfer of a substantial portion of its valuable assets to DowDupont for less than the assets were worth. On information and belief, the transactions were intended to frustrate and hinder creditors with claims against DuPont, including with respect to PFAS liabilities.

458. As a result of this internal organization, all of Dow and DuPont's assets were reshuffled into three divisions: the Agriculture Business, the Specialty Products Business, and the Material Sciences Business.

459. On June 1, 2019, the DuPont Defendants completed the final step of the restructuring by spinning off two newly publicly traded entities, Corteva and New Dow. Generally, the assets related to the Agriculture Business division were allocated to Corteva; assets related to the Material Science Business were allocated to New Dow; and the assets related to the Specialty Products Business remained with DowDupont, which then became New DuPont. DuPont became a wholly owned subsidiary of Corteva.

460. On information and belief, Corteva and New DuPont assumed responsibility for some of DuPont's historic PFAS liabilities.

461. On information and belief, during the restructuring, DuPont's assets were transferred to Corteva and New DuPont for far less than their actual value. At the end of these transactions, DuPont divested approximately half of its tangible assets, totaling roughly $20 billion.

462. The net result of the restructuring was to move DuPont's extensive PFAS liabilities to an underfunded company, Chemours, and to further shield DuPont's extensive assets by merging them with Dow's assets and then transferring them to Corteva and New DuPont for far less than their value.

463. Plaintiffs have been harmed by these transactions, which were designed to shield assets from creditors such as the Plaintiffs, which have been damaged by DuPont's conduct.

464. Plaintiffs are entitled to void these transactions and to recover property or value transferred under 6 Del. C. § 1307.

**Complaint and Jury Demand**                                     Page 75 of 83

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## TOLLING OF THE STATUTE OF LIMITATIONS

### Discovery Rule Tolling

465. Plaintiffs had no way of knowing about the risk of serious injury associated with the use of and exposure to PFAS until very recently.

466. Within the time period of any applicable statute of limitations, Plaintiffs could not have discovered, through the exercise of reasonable diligence, that exposure to PFAS is harmful to human health.

467. Plaintiffs did not discover and did not know of facts that would cause a reasonable person to suspect the risk associated with the use of and exposure to PFAS; nor would a reasonable and diligent investigation by Plaintiffs have disclosed that PFAS could cause personal injury.

468. For these reasons, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiffs' claims.

### Fraudulent Concealment Tolling

469. All applicable statute of limitations have also been tolled by Defendants knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

470. Instead of disclosing critical safety information regarding AFFF, Defendants have consistently and falsely represented the safety of AFFF products.

471. This fraudulent concealment continues through present day.

472. Due to this fraudulent concealment, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiffs' claims.

## **Estoppel**

473. Defendants were under a continuous duty to consumer, end users, and other persons coming into contact with their products, including Plaintiffs, to accurately provide safety information concerning its products and the risk associated with the use of and exposure to AFFF

474. Instead, Defendants knowingly, affirmatively, and actively concealed safety information concerning AFFF  and the serious risks associated with the use of and exposure to AFFF

475. Based on the foregoing, Defendants are estopped from relying on any statute of limitations in defense of this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgments against all Defendants, jointly and severally,  on each of the above-referenced claims and Causes of Action as follows:

Awarding compensatory damages to Plaintiffs for past and future damages, including but not limited, to pain and suffering for severe and permanent personal injuries sustained by the Plaintiffs, health care costs, medical monitoring, together with interest and costs as provided by law;

Punitive and/or exemplary damages for the wanton, willful, fraudulent, and/or reckless acts  of the Defendants who demonstrated a complete disregard and reckless indifference for the

safety  and welfare of the Plaintiffs and of the general public and to the Plaintiffs in an amount

sufficient  to punish Defendants and deter future similar conduct;

    Awarding Plaintiffs attorneys' fees;

    Awarding Plaintiffs the costs of these proceedings; and

    Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

    The Plaintiff hereby demands a trial by jury as to all issues so triable.

    Respectfully Submitted,

**THE KUYKENDALL GROUP, LLC**

*/s/ Frederick T. Kuykendall, III (KUY001)*
**FREDERICK T. KUYKENDALL, III**
23710 US Hwy 98, Suite D-1
Fairhope, AL 36532
Email: ftk@thekuykendallgroup.com
Phone: 205-434-2866


Date: July 30, 2025.



**SERVE THE DEFENDANTS AT THE FOLLOWING ADDRESSES BY CERTIFIED MAIL:**


3M COMPANY
c/o Corporation Service Company
251 Little Falls Drive
Wilmington, New Castle, DE 19808

AGC CHEMICALS AMERICAS INC.
c/o The Corporation Trust
Company  Corporation Trust
Center
1209 Orange Street
Wilmington, DE 19801

AMEREX CORPORATION
c/o James M. Proctor II
2900 Highway 280
Suite 300
Birmingham, AL 35223

ARCHROMA U.S. INC.
c/o The Corporation Trust
Company  Corporation Trust
Center
1209 Orange Street
Wilmington, DE 19801

ARKEMA INC.
900 First Avenue
King of Prussia, PA 19406

BASF CORPORATION
c/o The Corporation Trust
Company  Corporation Trust
Center
1209 Orange Street
Wilmington, DE 19801

BUCKEYE FIRE EQUIPMENT COMPANY
c/o A Haon Corporate Agent, Inc.
29225 Chagrin Blvd, Suite 350
Pepper Pike, OH 44122

CARRIER GLOBAL CORPORATION
c/o The Corporation Trust
Company  Corporation Trust
Center
1209 Orange Street
Wilmington, DE 19801

CHEMDESIGN PRODUCTS INC.
c/o Corporation Service Company
251 Little Falls Drive
Wilmington, New Castle, DE 19808

CHEMGUARD INC.
c/o The Prentice-Hall Corporation System,
Inc.  251 Little Falls Drive
Wilmington, New Castle, DE 19808

CHEMICALS, INC.
c/o Ashok K. Moza
12321 Hatcherville
Baytown, TX 77520

CHUBB FIRE, LTD
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

CLARIANT CORPORATION
c/o Corporation Service Company
8040 Excelsior Drive, Suite 400
Madison, WI 53717

CORTEVA, INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

DEEPWATER CHEMICALS, INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

DUPONT DE NEMOURS, INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

DYNAX CORPORATION
c/o Corporate Systems
LLC 3500 S. Dupont
Highway Dover, DE
19901

E.I. DUPONT DE NEMOURS AND COMPANY
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

KIDDE P.L.C.
c/o The Corporation Trust
Company  Corporation Trust
Center
1209 Orange Street
Wilmington, DE 19801

NATION FORD CHEMICAL COMPANY
c/o John A. Dickson, IV
2300 Bank Street
Fort Mill, SC 29715

NATIONAL FOAM, INC.
c/o The Corporation Trust
Company  Corporation Trust
Center
1209 Orange Street
Wilmington, DE 19801

THE CHEMOURS COMPANY
c/o The Corporation Trust
Company  Corporation Trust
Center
1209 Orange Street
Wilmington, DE 19801

THE CHEMOURS COMPANY FC, LLC
c/o The Corporation Trust
Company  Corporation Trust
Center
1209 Orange Street
Wilmington, DE 19801

TYCO FIRE PRODUCTS LP
c/o The Corporation Trust Company

Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

UNITED TECHNOLOGIES CORPORATION
c/o The Corporation Trust
Company  Corporation Trust
Center
1209 Orange Street
Wilmington, DE 19801

**Complaint and Jury Demand**                     Page **81** of **83**

UTC FIRE & SECURITY AMERICANS CORPORATION, INC.
c/o Registered Office
15720 Brixham Hill Ave #300
Charlotte, NC 28277

ALLSTAR FIRE EQUIPMENT
c/o Joseph A. Sposato
12328 Lower Azusa
Road  Arcadia, CA 91006

FIRE-DEX, LLC
c/o The Corporation Trust
Company  Corporation Trust
Center
1209 Orange Street
Wilmington, DE 19801

GLOBE MANUFACTURING COMPANY LLC
c/o CT Corporation
System  2 ½ Beacon
Street  Concord, NH
03301

HONEYWELL SAFETY PRODUCTS USA, INC.
c/o Corporation Service
Company  251 Little Falls
Drive  Wilmington, DE 19808

LION GROUP, INC.
c/o QI Services, Inc.
Federal Reserve Building 4th
Floor  150 East Fourth Street
Cincinnati, OH 45202

MALLORY SAFETY AND SUPPLY LLC
c/o Tim Loy
1040 Industrial Way
Longview, WA 98632

MINE SAFETY APPLIANCES CO., LLC
c/o The Corporation Trust
Company  Corporation Trust
Center
1209 Orange Street
Wilmington, DE 19801

**Complaint and Jury Demand**                    Page **82** of **83**

MUNICIPAL EMERGENCY SERVICES, INC.
c/o National Registered Agents,
Inc.  701 South Carson Street
Suite 200
Carson City, NV 89701

PBI PERFORMANCE PRODUCTS, INC.
c/o Corporation Service
Company  251 Little Falls
Drive  Wilmington, DE 19808

SOUTHERN MILLS, INC.
c/o Mark D. Christman
6501 Mall Boulevard
Union City, GA 30291

STEDFAST USA, INC.
c/o National Registered Agents
Attn: Samantha Sutton
300 Montvue Road
Knoxville, TN 37919

W.L.  GORE  &  ASSOCIATES
INC.  c/o The Corporation Trust
Company    Corporation   Trust
Center
1209 Orange Street
Wilmington, DE 19801